IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| RICHARD BARKER, #925332 | § | |
| VS. | § | CIVIL ACTION NO. 9:11cv183 |
| MAJOR FISHER, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Richard Barker, a prisoner confined at the Eastham Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

### Facts of the Case

The original complaint was filed on November 4, 2011. The Plaintiff made vague allegations about being kept in an inhumane cell. On February 23, 2012, the Court conducted an evidentiary hearing in accordance with *Spears v. McCotter*, 766 F.2d 179, 182 (5th Cir. 1985), wherein the Plaintiff's claims were considered. Several prison officials were in attendance during the hearing, including Assistant Warden William Motal, Regional Grievance Officer Phillip Brooks and Dr. Wright. All of the witnesses testified under oath.

The Plaintiff testified that he really did not want to sue anyone; instead, he just wanted to be transferred to another unit. He specified that he was transferred from the Hughes Unit to the Eastham Unit on April 8, 2008. He has been temporarily confined at the Skyview psychiatric facility

1

on many occasions. He is presently confined in administrative segregation at the Eastham Unit. He has been confined in administrative segregation for eleven years.

The Plaintiff's complaint centers around being temporarily confined in a cell which he described as filthy and inhumane. Bugs were crawling all over him, and he was exposed to fumes. The Plaintiff was unable to identify when he was confined in the cell. He was placed in the cell without any clothes or property. He was confined there after he allegedly threatened to harm himself. He testified that he did not threaten to hang himself. He sued Major Fisher and Major Butcher for placing him in the cell. Captain King was part of the conspiracy. He sued Psychologists Boulding and Clock (Klock) for authorizing his confinement in the cell. He stated that he sued Officer Pace involving an incident where he was about to "go off" when he got out of the shower. The Plaintiff stated that he fell and his feet went up in the air and it may have appeared that he was going to kick Officer Pace. Officer Pace resorted to using force. This incident occurred on the same day he was confined in the inhumane cell. The Plaintiff also complained that he was housed around gang members and that his life was in danger.

Warden Motal testified from the Plaintiff's prison records. He indicated that there was no record of the Plaintiff being involved in a use of force incident during the previous two years. The records included documentation that the Plaintiff was placed in a psychiatric observation cell on August 18, 2011. He did not find any recent life endangerment studies.

The Plaintiff gave the Court permission to review his prison records, including grievance, medical and classification records. The mental health records reveal that the incident in question occurred on August 18, 2011. Security personnel observed him with a noose around his neck, and he was threatening to harm himself. Dr. Julye cleared him to be placed in a psychiatric observation

2

cell at 2:15 a.m. He was subsequently placed in a psychiatric observation cell at the Estelle Unit at approximately 3:15 a.m. At 9:01 a.m., a mental health worker made the following entry:

> Course of treatment while housed in psych observation: Pt was nude wrapped in a suicide blanket and has been observed sitting or lying, talking to others, standing still, being quiet and sleeping. Pt stood upon the request of this writer at which time suicide blanket was observed for any damage. Pt reports he "hears voices" telling him to hurt himself. Pt reports his mother and father are deceased and he is not in contact with other family members; therefore he has nothing to live for. Pt has served 11 yrs of a 40 yr sentence and has been in seg for the past 9 yrs. Pt states he placed a noose around his neck, but no medical reports support this statement. Pt appeared depressed, but did state he was sleeping well in observation. Pt exhibited no psychosis, but reports "I still feel the same" - plans to harm himself, but no specific plan. Pt was provided supportive counsel and per protocol will be released to UOA for further disposition and counsel. Medical, security and Eastham MHS were notified of his release from observation.

Ms. Klock made an entry later that day at 12:34 p.m. indicating that the Plaintiff had been sent to the Estelle Unit during the night because he had a noose around his neck. The Plaintiff told her that he had fainted and should not be on three row. He told her that he placed the noose around his neck to get security to do something. He asserted that he was not actually suicidal. Sgt. Martin was in the room during the interview. He indicated that he would look into getting the Plaintiff a housing change. Ms. Klock's assessment was that no further intervention was needed at that time.

With respect to the Plaintiff's claim that his life was in danger, the most recent classification record on the subject was an Offender Protection Investigation dated January 21, 2011. The Plaintiff told officials that his life was in danger from gang members. During the investigation, the Plaintiff acknowledged that another inmate told him to file a life endangerment form and he would get a transfer. Officials were unable to substantiate the Plaintiff's claim that his life was in danger. It was noted that the only person identified by him as a threat had been moved off of the Eastham Unit on January 14, 2011. The complaint was denied because it could not be substantiated.

The only Step 2 grievance related to the Plaintiff's claims in the lawsuit was Grievance Number 2011084763. The grievance concerned the Plaintiff's claim that his life was in danger. On March 16, 2011, the Step 2 grievance was denied because his life endangerment claim could not be substantaited. Regional Grievance Officer Brooks testified that there was no record that the Plaintiff exhausted his remaining claims.

The Plaintiff's lawsuit raises several issues. He stated that his primary goal in pursuing this lawsuit was a desire for a transfer to another unit. Prison systems have broad discretion in the classification of inmates, and the federal courts will not interfere with classification decisions except in extreme circumstances. *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989); *Young v. Wainwright*, 449 F.2d 338 (5th Cir. 1971). Inmates do not have a constitutionally protected interest in being housed in certain facilities. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Kirby v. Johnson*, 243 Fed. Appx. 877, 879 (5th Cir. 2007). Prison officials have sole discretion in determining whether to transfer a prisoner to another facility. *Meachum v. Fano*, 427 U.S. 215, 228 (1976). The Plaintiff does not have a right to be transferred to another unit. *Scott v. FNU New*, 387 Fed. Appx. 469, 470 (5th Cir. 2010) (transfer denied in the context of a petition for a writ of mandamus). The Plaintiff's stated purpose for pursuing this lawsuit fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The claim should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Plaintiff also complained about the conditions of his confinement and alleged that he had been subjected to cruel and unusual punishment. The Eighth Amendment prohibits the imposition of cruel and unusual punishment. The standard of determining whether the conditions are cruel and unusual "must draw its meaning from the evolving standards of decency that mark the progress of

a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1984). Conditions "alone or in combination" may amount to a constitutional violation. *Id.* at 347. The Fifth Circuit has considered a variety of cases which illustrate the type of conditions that are necessary to be considered cruel and unusual. In *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir. 1983), the Court held that allegations of a cold, rainy, roach-infested jail cell, with inoperative toilet facilities stated a cause of action. Similarly, allegations of cold cells with rats crawling all over prisoners state a cause of action. *Foulds v. Corley*, 833 F.2d 52 (5th Cir. 1987).

In order to state a cognizable claim, a prisoner must allege facts showing that officials acted with a culpable state of mind -- that they acted with deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991); *Alberti v. Sheriff of Harris County, Texas*, 937 F.2d 984, 1004 (5th Cir. 1991). The Supreme Court defined the concept of deliberate indifference in *Farmer v. Brennan*, 511 U.S. 825 (1994). The Court held that "a prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; ... the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official, however, may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

In the present case, officials observed the Plaintiff with a noose around his neck and he purportedly was threatening to harm himself. They responded by contacting mental health professionals and obtaining authorization to place him in a psychiatric observation cell. They did not ignore him. Quite the contrary, they acted responsibly in protecting him from the possibility of suicide. They were not deliberately indifferent. Consistent with appropriate responses to suicide

5

threats, they took away items that could be used to hang himself. He was placed in a cell without his clothes and only a blanket. An officer kept watch over him at all times. The facts as alleged and developed do not support an inference of deliberate indifference.

The Court further notes that the Plaintiff was confined in the psychiatric observation cell for only a few hours before being returned to his normal cell at the Eastham Unit. An "isolated incident of non-remarkable proportions" does not rise to the level of a constitutional violation. *See James v. Alfred*, 835 F.2d 605, 607 (5th Cir. 1990); *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988). Consequently, the Plaintiff does not have a basis for a constitutional claim concerning the conditions in the psychiatric observation cell because he was kept there for only a short period of time. Nonetheless, with respect to the inhumane conditions claim, the dispositive factor was that the Defendants were not deliberately indifferent in placing him in the cell for his own protection for a short period of time.

The Plaintiff also complained about being confined in an area around gang members. The records reveal that prison officials investigated his complaint about his life being in danger. They were unable to substantiate his claims. The dispositive factor is the fact that his claims were investigated. His claims were not ignored. Officials acted reasonably in investigating his claims. They were not deliberately indifferent. Furthermore, they were not deliberately indifferent for refusing to transfer him after investigating his claims that his life was in danger from gang members and concluding that there was no evidence to support the claim. *McClure v. T.D.C.J.*, ____ Fed. Appx. ____, 2012 WL 177369 at *2 (5th Cir. Jan. 20, 2012).

The Plaintiff also mentioned that Officer Pace used force against him when he was about to "go off" when he got out of the shower. The Plaintiff stated that he fell and his feet went up in the

air and it may have appeared that he was going to kick Officer Pace. There is no documentation of the incident, and the medical records from that day do not mention any injuries whatsoever.

The Supreme Court has emphasized that the core judicial inquiry in an Eighth Amendment excessive use of force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). An excessive use of force claim has both subjective and objective components. *Id.* at 8. In other words, there is the issue of whether the officials acted with a "sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* A claimant must allege and prove there was an "unnecessary and wanton infliction of pain." *Id.* at 5. In deciding whether the use of force was wanton or unnecessary, a court may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. (internal quotation and citation omitted). The absence of a serious injury is relevant to but not dispositive of the excessive force claim. *Id.*

The Supreme Court added the following caveat concerning the nature of the force used in a given situation:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. at 9-10.

In the present case, the Plaintiff acknowledged that he was about to "go off" and that it may have appeared that he intended to kick Officer Pace when his feet went up into the air. These facts warranted a response from Officer Pace. But the dispositive factor here is that there was no evidence that the Plaintiff suffered any harm from whatever force Office Pace may have used. The Plaintiff has not shown a non-*de minimis* injury sufficient to proceed with his claims.

The Plaintiff's various claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. His complaint should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Court feels compelled to also address the issue of exhaustion. The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court accordingly unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and is required for all actions brought by prisoners. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Supreme Court's most recent pronouncement on exhaustion was in *Jones v. Bock*, 549 U.S. 199 (2007). The Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Id.* at 211. It was noted that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216. The Fifth Circuit has added, however, that after *Jones v. Bock*, a complaint is still subject to dismissal for failure to state a claim where the prisoner's failure to exhaust appeared

on the face of the complaint. *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007); *Torns v. Mississippi Dept. of Corrections*, 301 Fed. Appx. 386, 389 (5th Cir. 2008).

In the present case, the grievance records reveal that the Plaintiff exhausted his claim that his life was in danger. He did not exhaust his other claims, thus such claims should be dismissed for the additional reason that they fail to state a claim upon which relief may be granted and dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the civil rights complaint is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **7** day of **March, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE